**STATE OF VERMONT**

SUPERIOR COURT
Washington Unit

2020 SEP 21 P 4: 53

**CIVIL DIVISION**
**Docket No. 484-9-19 Wncv**

Christopher McVeigh
Plaintiff

FILED

v.

Vermont School Boards Association
Defendant

## DECISION
### Cross-Motions for Summary Judgment

Plaintiff Christopher McVeigh sought production of certain records from Defendant the Vermont School Boards Association (VSBA) pursuant to Vermont's Access to Public Records Act (PRA), 1 V.S.A. §§ 315–320. VSBA refused to produce those records, claiming that it is a private entity not subject to the PRA, which applies to "public agencies." In this case, Mr. McVeigh seeks a declaratory judgment to the effect that VSBA is the "functional equivalent" of a public agency and therefore is subject to the PRA. Following a period of discovery limited in scope to that issue, the parties have filed cross-motions for summary judgment addressing whether VSBA is subject to the PRA.

A Vermont trial court decision, *Prison Legal News v. Corr. Corp. of Am.*, No. 332-5-13 Wncv, 2014 WL 2565746 (Vt. Super. Ct. Jan. 10, 2014), first adopted and applied the concept of functional equivalence under the PRA in Vermont. The concept of functional equivalence clarifies that the definition of a "public agency" subject to the PRA, 1 V.S.A. § 317(a)(2), in limited circumstances, reaches those private entities that are, in effect, the functional equivalent of the traditional governmental entities that ordinarily would be subject to the PRA. It recognizes the foundational importance of transparency to the form and function of government and reinforces the PRA by preventing those who govern from obviating it by mere dint and discretion to delegate public functions to nongovernmental entities.

*Prison Legal* was adopted by and applied in detail in *Whitaker v. Vt. Info. Tech. Leaders, Inc.*, No. 781-12-15 Wncv, 2016 WL 10860908 (Vt. Super. Ct. Oct. 27, 2016). Functional equivalence also has arisen in *Human Rights Defense Center v. Correct Care Solutions*, No. 51-2-19 Wncv (Vt. Super. Ct. Oct. 18, 2019), *Sleigh v. Barrett*, No. 158-7-18 Oscv (Vt. Super. Ct. Mar. 28, 2019); and *Long v. City of Burlington*, No. 996-11-16 Cncv (Vt. Super. Ct. Oct. 10, 2017). The Vermont Supreme Court has not yet had the opportunity to address this matter.

Mr. McVeigh, applying *Prison Legal* and *Whitaker*, argues that VSBA is the functional equivalent of a public agency and therefore is subject to the PRA. VSBA argues that it is a private entity outside the limited scope of the PRA, the plain language of which, it argues, altogether eschews the concept of functional equivalence. VSBA argues that, even if functional equivalence is appropriately applied under the PRA, it is not, as a straightforward factual matter, the functional equivalent of a public agency for PRA purposes.

It is unnecessary to rule on VSBA's argument that the PRA forecloses any use of the functional equivalence concept. That issue only becomes necessary to resolve if in fact applying the functional equivalence test would subject VSBA to the PRA. There is no dispute in this case that VSBA would only be subject to the PRA if it is determined to be the functional equivalent of a public agency. Upon reviewing the record, the law, and the parties' briefing, the court concludes that VSBA is not the functional equivalent of a public agency, and it therefore is not subject to the PRA.

For purposes of analysis of the functional equivalence issue in this case, both parties employed the reasoning of *Prison Legal* and *Whitaker*. The court does the same. As the parties and their able counsel are fully familiar with the law, the court refers the reader to those decisions for a more complete explication of functional equivalence and here merely summarizes the test.[1]

The test for functional equivalence uses a nonexclusive list of factors as follows:

> The predominant factors used to evaluate functional equivalence are: "(1) whether the entity performs a governmental function; (2) the level of government funding; (3) the extent of government involvement or regulation; and (4) whether the entity was created by the government." "The cornerstone of this analysis, of course, is whether and to what extent the entity performs a governmental or public function, for we intend by our holding to ensure that a governmental agency cannot, intentionally or unintentionally, avoid its disclosure obligations under the Act by contractually delegating its responsibilities to a private entity."

*Whitaker v. Vt. Info. Tech. Leaders, Inc.*, No. 781-12-15 Wncv, 2016 WL 10860908, *2 (Vt. Super. Ct. Oct. 27, 2016) (citations omitted). Functional equivalence does not subject all private actors that serve or do business with the government, or intersect or overlap with governmental functions, to the PRA. It does so only when "[h]olding otherwise would have the anomalous effect" of shielding public functions from public transparency "in conflict with the purpose and policy of the Act." *Id.* at *6 (citations omitted).

In *Prison Legal*, the court ruled that the Vermont Department of Corrections' delegation of the uniquely governmental responsibility of imprisoning Vermonters to a

---

[1] The court recognizes that, while Mr. McVeigh is *pro se* in this case, he is a Vermont attorney and principal of the law firm of McVeigh Skiff.

private company, Corrections Corporation of America (CCA), made CCA the functional equivalent of a public agency for PRA purposes. In *Whitaker*, the court ruled that a nonprofit entity, Vermont Information Technology Leaders (VITL), had become so woven into the fabric of the State's regulation and operation of the health care industry that it too had become the functional equivalent of a public agency for PRA purposes. The *Whitaker* court recognized that healthcare, unlike imprisonment, is not an exclusively governmental function, but VITL's extraordinary entanglement with government left little doubt that it was doing much other than conducting public agency business by delegation.

The undisputed factual record of this case reveals that VSBA is neither the delegee of any uniquely governmental function, as in *Prison Legal*, nor is it so extraordinarily entangled with public agency business, as in *Whitaker*, that it ought to be subject to the PRA. VSBA essentially is a membership-based trade association for those Vermont supervisory union boards, supervisory district boards, and private school boards that voluntarily choose to be members and pay dues. With its resources, it advocates and lobbies to advance its interests. It provides education and training to school board members. It provides consulting services on legal issues, policy matters, board operations and management, and strategic planning. It exerts no regulatory or other control or decision-making, directly or indirectly, over any school or school board, and no school or school board controls it beyond the exercise of the ordinary voting rights of its members.

VSBA is incorporated into Vermont statutes minimally. The State auditor of accounts consults with it, among others, in the production of guidance on internal financial controls for counties, municipalities, supervisory unions, and supervisory districts. 32 V.S.A. § 163(11). Its executive director serves on an advisory council that "review[s] and coordinate[s] school and statewide activities relating to the prevention of and response to harassment, hazing, and bullying." 16 V.S.A. § 570(d)(2). But these and the small handful of other similar, minor involvements with public business do not in the aggregate materially show that VSBA is in effect any private repository of public records.

In short, there is no meaningful delegation of public function to VSBA, whether from the State or any municipality, and it is not woven into relevant regulatory frameworks in any other material way. It is not the functional equivalent of a public agency.

. Mr. McVeigh attributes far too much significance to the fact that VSBA's general area of interest, public education, in large part is a public function. The mere overlap of interest or subject matter is immaterial for purposes of functional equivalence. The test looks for a direct or indirect delegation of public function accompanied by sufficient entanglements showing that the private entity in fact is functioning as a public agency. Those circumstances are not present here.

3

## ORDER

VSBA's motion for summary judgment is granted.  Mr. McVeigh's is denied.

Robert R. Bent,
Superior Judge

4